# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| LOCAL AD LINK, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No.: 2:09-cv-01564-GMN-LRL |
| | ) | |
| ADZZOO, LLC, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiffs and Defendants are Internet advertising companies and their owners and employees.  This case arises out of Defendants' alleged civil conspiracy, misappropriation of trade secrets, breach of non-competition and confidentiality agreements, defamation, and other tortious conduct against Plaintiffs.  Pending before the Court are Third-Party Defendants' separate Motions to Dismiss Third-Party Complaint (ECF Nos. 51, 55); Defendants' Motion to Dismiss First Amended Complaint for Failure to Prosecute (ECF No. 58); and Defendants' Motion for Entry of Default (ECF No. 59).  For the reasons given herein, the Court GRANTS the Motion to Dismiss Third-Party Complaint (ECF No. 51); DENIES the Motion to Dismiss Third-Party Complaint (ECF No. 55) as moot; DENIES the Motion to Dismiss First Amended Complaint for Failure to Prosecute (ECF No. 58); and DENIES the Motion for Entry of Default (ECF No. 59) without prejudice.

Plaintiffs have also filed a Notice of Appearance and Request for Extension of Time (ECF No. 78) ("Motion to Extend Time").  In response, Defendants filed a Cross-Motion to Strike Appearance and for Sanctions (ECF No. 79, 80).  Magistrate Judge Leavitt has already denied Defendants' Cross-Motion to Strike Appearance (ECF No.

84), and the Court shall DENY the Motion for Sanctions, as well.  For the reasons that follow, Plaintiffs' Motion to Extend Time is also DENIED.

I.    FACTS AND PROCEDURAL HISTORY

 Plaintiff LocalAdLink, Inc. ("LocalAdLink") is a Nevada corporation specializing in internet advertising campaign management for small- and medium-sized business. Plaintiff Beyond Commerce, Inc. ("Beyond Commerce") is LocalAdLink's holding company.  Plaintiff Robert McNulty is the founder and CEO of both companies.

In or about October 2008, LocalAdLink hired Defendants Scott and Kevin Anderton ("the Andertons") as sales representatives.  The Andertons eventually introduced Defendant Don Rutt to LocalAdLink.  Plaintiffs allege that the Andertons introduced Rutt to LocalAdLink as part of a conspiracy conceived in or about January or February 2009, when the Andertons and Rutt agreed to create a company to directly compete with LocalAdLink.  In order to obtain proprietary information, the Andertons approached McNulty and introduced him to Rutt on February 5 or 6, 2009 ("the Meeting").  The Andertons and Rutt represented that Rutt would be able to bring many network marketers with him to LocalAdLink.  McNulty alleges that at the beginning of the Meeting, he informed Defendants that they might learn proprietary information ("the Proprietary Information"), and that a condition of the meeting was to keep any such information confidential.  The Andertons and Rutt orally agreed ("the Oral NDA") not to disclose the Proprietary Information to anyone or to use it for any reason other than the furtherance of LocalAdLink.  McNulty also showed the Andertons and Rutt a copy of a Private Placement Memorandum ("the PPM") which was a similar confidentiality agreement, to which they orally agreed to conform.  McNulty then disclosed the Proprietary Information, which included information about LocalAdLink's technology, systems, operations, financials, future plans, markets, etc.  Plaintiffs allege the

Proprietary Information had independent economic value because it was not readily known or discernable by the public or potential competitors.  Plaintiffs believe that the Andertons and Rutt never intended to honor the Oral NDA or the PPM, and that their participation in the Meeting was for the sole purpose of learning the Proprietary Information in order to start a rival company that mimicked LocalAdLink's business methods.  That rival company is Defendant AdzZoo, LLC ("AdzZoo").  Less than a week after the Meeting, the Andertons and Rutt purchased the rights to the internet domain name "adzzoo.com."  Plaintiffs allege that AdzZoo is a "clone" of LocalAdLink based upon the stolen Proprietary Information.

The above events represent only the genesis of the continuing tortious conduct Plaintiffs allege.  Plaintiffs allege that "[i]mmediately after forming AdzZoo, Rutt and the Andertons began a deliberate and methodical campaign of defamation, corporate espionage, and corporate sabotage in an attempt to destroy LocalAdLink and take all its representatives and customers." (ECF No. 28-2 ¶ 43).  Plaintiffs allege that the Andertons and Rutt recruited Eric Rodin, Mike Ippolito, Josh Dobrichovsky, Terry Curtin, and Daniel Hockenberger to AdzZoo and that all of these Defendants agreed to use illegal means to undermine LocalAdLink, including use of misappropriated trade secrets, fraud, and defamation.  Plaintiffs allege that all of these individual Defendants ("the Former Representative Defendants"), except Hockenberger, were representatives of LocalAdLink who had agreed to the terms and conditions in the LocalAdLink Representative Bylaws, Policies, and Procedures ("the Bylaws").  The Bylaws specified that for six months after ceasing to be LocalAdLink representatives, they would not recruit any LocalAdLink representatives or customers to any other network marketing company, except those representatives that they personally sponsored.  The Bylaws also prohibited them from selling or attempting to sell any competing programs, products, or services to

LocalAdLink customers or representatives while they were still LocalAdLink representatives.  Plaintiffs allege that the Former Representative Defendants violated the Bylaws, and hence are liable for breach of contract, tortious interference with business relations, and other torts by: (1) joining AdzZoo while representing LocalAdLink; (2) competing with LocalAdLink through AdzZoo thereafter; (3) recruiting LocalAdZoo representatives that they did not sponsor; (4) offering $10,000 to anyone who recruited a high-level LocalAdLink representative; (5) offering $500 to anyone who recruited several mid-level LocalAdLink representatives; and (6) defaming LocalAdLink and McNulty. Although not recounted in this section, Plaintiff provides specific allegations in the First Amended Complaint ("FAC"). (*See id.* ¶¶ 55B60).

The FAC, filed in state court before removal, lists nineteen causes of action (against all Defendants unless otherwise noted): (1) Injunctive Relief [Against Defamation]; (2) Injunctive Relief [Against Use of Proprietary Information]; (3) Injunctive Relief [Against Illegal Access of Plaintiff's Computer Systems]; (4) Misappropriation of Trade Secrets; (5); Civil Conspiracy; (6) Defamation; (7) Fraud (against Rutt and the Andertons); (8) Fraud (against Rutt, the Andertons, Rodin, Ippolito, Dobrichovsky, and Curtin); (9) Tortious Interference with Contractual Relations; (10) Tortious Interference with Prospective Economic Advantage; (11) Breach of Contract (against the Former Representative Defendants); (12) Breach of Contract (against Kevin Anderton); (13) Breach of Contract (against Rutt and the Andertons); (14) Breach of Covenant of Good Faith and Fair Dealing (against the Former Representative Defendants); (15) Civil Racketeering; (16) Unlawful Access of Computers; (17) Identify Theft; (18) Infringement of Rights of Privacy and Publicity; and (19) Deceptive Trade Practices. (ECF No. 28-2).  Defendants previously moved to dismiss pursuant to Rules 8, 9(b), and 12(b)(6), (*see* ECF No. 28), and the Court granted the motion in part and denied

it in part, (*see* ECF No. 37).

Defendants then answered the FAC, asserting counterclaims against Plaintiffs and third-Party claims against Third-Party Defendants Omnireliant Holdings, Inc. ("Omnireliant") and Zurvita Holdings, Inc. ("Zurvita"). (*See* ECF No. 39 at 64B70). Defendants accuse Plaintiffs of: (1) Violation of the Lanham Act, 15 U.S.C. 1125(a)(1)(B) (by all Defendants against all Plaintiffs); (2) Breach of Contract (by the Andertons and Ippolito against LocalAdLink); (3) Breach of the Covenant of Good Faith and Fair Dealing (by the Andertons and Ippolito against LocalAdLink); (4) Promissory Estoppel (by the Andertons and Ippolito against all Plaintiffs); (5) Unjust Enrichment (by the Andertons and Ippolito against all Plaintiffs); (6) Defamation and Business Disparagement (by all Defendants against all Plaintiffs); (7) Tortious Interference with Prospective Economic Relations (by all Defendants against all Plaintiffs); (8) Fraud (by the Andertons and Ippolito against all Plaintiffs); and (9) Fraud (by AdzZoo against all Plaintiffs). Defendants have sued Third-Party Defendants for: (1) Declaratory Relief (by all Defendants against all Third-Party Defendants); and (2) Fraud (by AdzZoo against Omnireliant).

Several motions are pending before the Court. First and second, Omnireliant and Zurvita have separately moved to dismiss the Third-Party Complaint ("TPC"). (*See* ECF No. 51, ECF No. 55). Third, Defendants have moved to dismiss the remaining claims in the FAC pursuant to Rule 41(b) for failure to prosecute. (*See* ECF No. 58). Fourth, Defendants have moved for entry of default on their counterclaims against Plaintiffs. (*See* ECF No. 59). Fifth, Plaintiffs filed a Motion to Extend Time (ECF No. 78). Sixth, Defendants filed a Cross-motion for Sanctions (ECF No. ECF No. 79, 80).

/ / /

/ / /

## II.    LEGAL STANDARDS

### A.    Rule 14(a)

Rule 14 of the Federal Rules of Civil Procedure governs impleader practice in federal court.  "A defending party may, as third-Party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part *of the claim against it*." Fed. R. Civ. P. 14(a)(1) (emphasis added).  A plaintiff may also file a third-party complaint according to the same standards. *See* Fed. R. Civ. P. 14(b).  After a third-party defendant is properly impled, a plaintiff may "assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(3).  Rule 14 permits a defendant to implead a third-party only if that party may be liable for subrogation, contribution, or indemnification as against a plaintiff's claims against the defendant; a defendant may not implead a third-party defendant simply because the defendant believes it has a claim against a party that is transactionally related to the plaintiff's claims against the defendant. *See Krainski v. Mill*, 356 Fed. Appx. 951 (9th Cir. 2009) (affirming dismissal of a third-Party complaint); *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199B200 (9th Cir. 1988) (citing 6 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446, at 257 (2d ed. 1971)) ("[A] third-Party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto."); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (citing *id.*); *Gandy v. Shaklan-Brown*, No. CV-06-3072-PHX-PGR, 2008 WL 4446708, at *2 (D. Ariz. Sept. 30, 2008).  "The claim against the third-Party defendant must be based upon plaintiff's claim against defendant." 6 Wright & Miller § 1446.  Only a plaintiff's ability to join claims against a third-Party defendant is so broad as to require mere transactional

relation, and only after the third-Party defendant has first been impled under the stricter

standard. *See* Fed. R. Civ. P. 14(a)(3).

### B.      Rule 41(b)

A defendant may move to dismiss an action "[i]f the plaintiff fails to prosecute or

to comply with these rules or a court order." Fed. R. Civ. P. 41(b).

> In determining whether to dismiss a claim for failure to prosecute or failure
> to comply with a court order, the Court must weigh the following factors:
> (1) the public's interest in expeditious resolution of litigation; (2) the
> court's need to manage its docket; (3) the risk of prejudice to
> defendants/respondents; (4) the availability of less drastic alternatives; and
> (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002).  The first factor always favors

dismissal, *id.* (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)), and

the fifth factor always weighs against dismissal, *id.* at 643 (citing *Hernandez v. City of El

Monte*, 138 F.3d 393, 399 (9th Cir. 1988)).  Under the second factor, a trial judge has

discretion to determine the effect of delay in a particular case on docket management.

*Id.* at 643 (citing *Yourish*, 191 F.3d at 990).  A defendant bears the burden of establishing

under the third factor that the Plaintiff's actions "impaired the defendant's ability to

proceed to trial or threatened to interfere with the rightful decision of the case." *Id.* (citing

*Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987)).  Pendency of a lawsuit is

insufficient without more. *Id.*  Unreasonable delays need not be tolerated, however, and

the reason for a delay is relevant to whether it is reasonable. *Id.* at 642B43 (citing *Ash v.

Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984)).  Under the fourth factor, a court should

consider whether public policy strongly favors resolving the particular dispute on the

merits, whether dismissal would severely penalize Plaintiff for their attorney's conduct

and not their own, and whether any bad conduct by the party is willful, in bad faith, or

otherwise interferes with the correct decision of the case.  *Hearns v. San Bernardino*

1    *Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008).

2         **C.    Rule 55**

3         Federal Rule of Civil Procedure 55(b) permits a default judgment following

4    the entry of default by the clerk under Rule 55(a).  When the requested relief is anything

5    other than a sum certain or a sum that can be made certain by computation, the party must

6    apply to the court for a default judgment after entry of default. Fed. R. Civ. P.

7    55(b)(1)B(2).  The choice as to whether a default judgment should be entered is at the

8    sole discretion of the trial court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.

9    1980).  A defendant's default alone does not entitle a plaintiff to a court-ordered

10   judgment. *See id.*  Instead, the Ninth Circuit has determined that a court should look at

11   seven discretionary factors before rendering a decision on default judgment. *See Eitel v.*

12   *McCool*, 782 F.2d 1470, 1471B72 (9th Cir. 1986).  These factors are: (1) the possibility

13   of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the

14   sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the

15   possibility of a dispute concerning material facts; (6) whether the default was due to

16   excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

17   Procedure favoring decisions on the merits. *Id*. (citing 6 Moore's Federal Practice ¶ 55-

18   05[2], at 55-24 to 55-26).  Once the court clerk enters a default, the well-pleaded factual

19   allegations of the complaint are taken as true, except for those allegations relating to

20   damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917B18 (9th Cir. 1987).  The

21   plaintiff is required to prove all damages sought in the complaint, and those damages may

22   not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.

23   R. Civ. P. 54(c).  If sufficiently documented and detailed, damages claims may be fixed

24   by an accounting, declarations, or affidavits. *See James v. Frame*, 6 F.3d 307, 310 (5th

25   Cir. 1993).

# III.  ANALYSIS

## A.  Third-Party Defendants' Motions to Dismiss

Omnireliant moves to dismiss pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and 14(a).  Omnireliant first notes that it has not been sued based on any alleged secondary liability for Plaintiffs' claims against Defendants, making its joinder as a Third-Party Defendant improper.  Defendants indeed make no allegation that either Omnireliant or Zurvita are secondarily liable based on Defendants' potential liability to Plaintiffs, and they completely fail to address the issue of secondary liability in their response, instead focusing on transactional relation.  The Court therefore grants the Motion to Dismiss Third-Party Complaint (ECF No. 51) on this basis as to both Third-Party Defendants.

Zurvita bases its own Motion to Dismiss Third-Party Complaint (ECF No. 55) on lack of personal jurisdiction.  As Zurvita will be dismissed as a Third-Party Defendant because it was improperly impled under Rule 14(a), the Court denies this motion as moot.

## B.  Defendants' Motion to Dismiss for Failure to Prosecute, Plaintiffs' Motion to Extend Time, and Defendants' Cross-Motion for Sanctions

Defendants move to dismiss the FAC pursuant to Rule 41(b) for failure to prosecute.  Plaintiffs have not timely responded.  Defendants note that Plaintiffs (1) failed to comply with the Magistrate Judge's March 15, 2010 order instructing Plaintiff to retain new counsel or to file a memorandum explaining why they had not done so by April 12, 2010, (*see* ECF No. 46); and (2) failed to answer the Counterclaim within twenty-one days of service, as required by Rule 12(a)(1)(B).  Defendants appear to be correct on both counts.  Plaintiffs did not obtain counsel until two months after the Magistrate Judge's order required it and did not file a request to extend time until three months after the deadline to respond.

In the present case, the failure to answer the Counterclaim, to retain counsel, or to

explain why counsel had not been obtained has not had an extreme effect on docket management.  Still, the Court has hundreds of matters on its docket, and neither the taxpayers nor Defendants can afford to waste resources on "file-and-forget" cases where Plaintiffs are rarely heard from.  The neglect involved in the present delay is simply not excusable, and Plaintiffs' actions are solely their own fault, not any attorney's.  Plaintiffs contended in response to the motion to strike and for sanctions that "Plaintiff's entities are involved in the numerous and time consuming activities of operating businesses" and that "retaining new counsel requires more that picking a name out of the phone book." This is the entirety of Plaintiffs' explanation.  Ignoring the order of a Magistrate Judge-- without even requesting an extension of time before the deadline passes--and failing to respond to pending motions because "I'm busy, and I want more time to pick out a new lawyer than the judge gave me" is not excusable neglect.  There is a risk of prejudice from the delay, because, as Defendants claim, Plaintiffs' economic viability is becoming increasingly uncertain.  This may in fact be due to Defendants' tortious activity against Plaintiffs, as claimed in the FAC, but nothing prevented Plaintiffs from filing motions *pro se* or from engaging counsel simply to make timely responses while Plaintiffs researched the selection of specialized counsel.  Plaintiffs did not communicate with the Court at all after being ordered to obtain new counsel until months after the deadline passed.  Consequently, Plaintiffs' Motion to Extend Time "to respond to any motions or other pleadings," (*see* ECF No. 72), is denied

The Court will not, however, dismiss the FAC for failure to prosecute.  Plaintiffs' primary failure is the failure to respond to the Counterclaim and to obtain counsel.  This failure does not constitute a lack of prosecution regarding Plaintiffs' own claims asserted in the FAC.  Rather, Plaintiffs' failure to answer the Counterclaim carries its own consequences: the facts alleged in the Counterclaim, except those alleging the amount of

damages, have been admitted as a matter of law. *See* Fed. R. Civ. P. 8(b)(6), 12(a)(1)(A). Although failure to comply with the Magistrate Judge's order does support sanctions under Local Rule IA 4-1(d), no further sanctions beyond these consequences are necessary at this time.

### C.    Defendants' Motion for Entry of Default

Although the motion is entitled "Motion for Entry of Default," in substance Defendants request a default judgment under Rule 55(b).  They must first obtain an entry of default from the Clerk under Rule 55(a). *See, e.g.*, *Webster Indus., Inc. v. Northwood Doors, Inc.*, 244 F. Supp. 2d 998, 1003 (N.D. Iowa 2003); *see also Eitel*, 782 F.2d at 1471 (citing 6 Moore ¶ 55.02[3], at 55-8) ("*Eitel* apparently fails to understand the two-step process required by Rule 55.").  If the Clerk is satisfied that the opposing party has been served with the Counterclaim and has not timely responded to it, the Clerk must enter default, *see* Fed. R. Civ. P. 55(a), after which Defendants may make a motion to the Court--or to the Clerk, where only a sum certain has been claimed--for a default judgment, *see* Fed. R. Civ. P. 55(b)(1)B(2).  The Court therefore denies as premature the present motion without prejudice.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss Third-Party Complaint (ECF No. 51) is GRANTED; the Motion to Dismiss Third-Party Complaint (ECF No. 55) is DENIED as moot; the Motion to Dismiss First Amended Complaint for Failure to Prosecute (ECF No. 58) is DENIED; the Motion for Entry of Default (ECF No. 59) is DENIED without prejudice; the Motion to Extend Time (ECF No. 78) is DENIED; and the Cross-Motion for Sanctions (ECF No. 80) is DENIED.

DATED this 9th day of September, 2010.

Gloria M. Navarro
United States District Judge